UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN F. BARKER, JR., | ) | CASE NO. 5:13CV1341 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| vs. | ) | |
| | ) | |
| KATHRYN A. BELFANCE, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff John F. Barker, Jr. ("plaintiff") filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1983 against Colleen M. Collins ("Collins"); her attorneys Kathryn A. Belfance, Lisa Carey Dean, Robyn C. Bergman, Todd Anthony Mazzola, and James Benjamin; and the law firm of Roderick Linton Belfance, LLP (collectively, "defendants"). In the complaint, plaintiff alleges Collins may use the fact of his physical disability, paraplegia, in the trial of their child custody dispute to argue that she is better able to care for their child. He seeks injunctive relief to prevent her from using this argument in state domestic relations court.

Plaintiff also filed an *ex parte* motion for a temporary restraining order. (Doc. No. 3.) He asks the Court to issue an order that prevents the defendants from asserting any argument pertaining to his disability in the course of the state court proceedings. For the reasons set forth below, the motion is **DENIED**, and this action is **DISMISSED**.

# I. BACKGROUND

Plaintiff filed a parentage action in the Summit County Domestic Relations Court on September 18, 2012, seeking to establish a parent/child relationship with his infant daughter, born June 30, 2012.[1] *See Barker v. Collins*, No. DR-2012-09-2782 (Summit Cnty Ct. Comm. Pl. filed Sept. 18, 2012). Plaintiff and Collins resided together at the time of their daughter's birth, but their relationship dissolved shortly thereafter. Collins left with the baby and would not allow Plaintiff to see her. Plaintiff filed the parentage action, a motion for allocation of parental rights, and an *ex parte* emergency motion for temporary custody. The court granted the emergency motion, and plaintiff took possession of the baby. Collins claimed plaintiff then kept her from having contact with the baby. She asked the court to vacate the *ex parte* temporary order. The parties appeared before Summit County Domestic Relations Court Judge John P. Quinn in October 2012, and he issued an interim order requiring the parties to alternate possession of the infant every three days.

This order did little to quell the flurry of motions seeking temporary sole custody. Plaintiff filed an emergency motion in December 2012, claiming Collins was not properly caring for the infant. The court denied that motion. On March 8, 2013, Collins filed a notice of intent to relocate to the city of Huron in Erie County, Ohio. About six weeks later, Collins filed an emergency motion, seeking temporary physical and legal custody of the child because plaintiff was allegedly not complying with the court's possession schedule. In the motion, Collins alludes to several petitions for domestic violence civil protection orders that plaintiff filed against her. It appears he obtained at least one *ex parte* civil protection order against Collins. She disputed the

---

[1] Summit County Domestic Relations Court dockets and filings are available at http://www.cpclerk.co.summit.oh.us/welcome.asp.

allegations and claimed plaintiff brought the charges to deny her access to her baby. Collins filed a motion to designate her as the custodial parent for medical decisions on June 3, 2013, claiming plaintiff staged an incident in a pediatrician's office that resulted in another domestic violence action and a letter from the pediatrician terminating the physician/patient relationship. Collins also filed a motion to show cause as to why plaintiff should not be held in contempt of court for failing to abide by the court's possession order. That motion has been set for hearing on July 19, 2013.

On June 18, 2013, plaintiff filed a motion for in camera review of a disabled parenting evaluation. In his motion, he states a parenting evaluation was performed by the Shepherd Center in Atlanta, Georgia, and that he intends to use the evaluation report at trial and call the evaluator as an expert witness.

Later that same day, plaintiff filed this action in federal court, including an *ex parte* motion for a temporary restraining order. He asks this Court to restrain Collins and her attorneys from asserting in the pending domestic relations action that Collins is better able to care for their child due to plaintiff's physical disability. In his complaint, he contends that if Collins asserts this claim at trial, his rights under Title II and Title V of the Americans with Disabilities Act ("ADA") may be violated. He further asserts that the defendants have disregarded the report of the evaluator, and if they continue to pursue claims that his disability limits his ability to care for the baby, he will be denied equal protection under the Fourteenth Amendment of the United States Constitution. He argues that unless this Court grants his motion for a temporary restraining order, he will suffer irreparable harm to the relationship he has with his child.

## II. LAW AND ANALYSIS

**A. The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims**

"[F]ederal courts traditionally have refrained from exercising jurisdiction over cases which in essence are domestic relations disputes[,] [e]ven when brought under the guise of a federal question action[.]" *Firestone v. Cleveland Trust*, 654 F.2d 1212, 1215 (6th Cir. 1981). "The field of domestic relations involves local problems 'peculiarly suited to state regulation and control and peculiarly unsuited to control by federal courts[,]'" and state courts "have developed a proficiency and expertise in these cases[.]" *Id*. (internal citation omitted). Accordingly, it is incumbent upon the district court to examine the claims of the complaint to determine the true character of the dispute before it. *Id.* Although federal jurisdiction is not automatically lacking just because a case has domestic relations overtones, federal courts lack jurisdiction where "the action is a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003).

That is precisely the situation in this case. Although plaintiff attempts to couch his claims as potential violations of the ADA and the Fourteenth Amendment, the only relief he seeks from this Court is an order prohibiting Collins and her attorneys from arguing to the domestic relations court that she should be the primary residential parent of the child because his physical condition limits his ability to care for the child. He contends defendants "propose to use the plaintiff's disability against him for the purpose of denying parental rights and child custody." (Doc. No. 1 at 1.) He asserts that "[b]y allowing this argument to be used, the plaintiff suffers an unreasonable burden to prove that despite his medical condition, . . . he is capable and willing to provide appropriate continued care for his minor child." (Doc. No. 1 at 1.) To entertain

4

these claims, this Court would necessarily be required to address whether plaintiff's disability is a relevant factor in the custody decision. The domestic relations court, however, is uniquely suited to addressing issues involving the allocation of parental rights and responsibilities. *Firestone*, 654 F.2d at 1215. In making these decisions, the domestic relations court must consider a number of factors to determine what allocation of parenting responsibilities is in the best interest of the parties' child. *See* Ohio Rev. Code § 3109.04. Plaintiff can raise his arguments to the state court if Collins challenges his ability to care for the child due to his physical condition. This Court lacks jurisdiction to make that determination.

**B. Plaintiff Lacks Standing to Bring This Action**

Furthermore, even if this Court had subject matter jurisdiction over this case, plaintiff lacks standing to bring this action. Standing is a jurisdictional requirement; in every federal case, the party bringing suit has the burden to establish standing to prosecute the action. *Coal Operators and Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002). The issue of standing involves whether the litigant is entitled to have the Court decide the merits of the dispute or the particular issues involved therein. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Federal courts must balance "the heavy obligation to exercise jurisdiction," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 820 (1976), against the "deeply rooted" commitment "not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944).

Consistent with these principles, standing jurisprudence has two components: Article III standing, which enforces the Constitution's "case or controversy" requirement, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–62 (1992), and prudential standing, which

embodies "judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984). To establish Article III standing, the plaintiff must show that the conduct of which he complains has caused him to suffer an "injury in fact" that a favorable judgment will redress. *See Lujan*, 504 U.S. at 560–61. To satisfy this requirement, plaintiff must demonstrate he sustained "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (internal citations and quotation omitted). Moreover, it must be "likely," as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). Prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751.

Here, plaintiff lacks Article III standing to bring this case in federal court because he has not yet suffered an "injury in fact." For his cause of action to materialize, two independent events must occur. First, Collins and her attorneys must decide to present this argument to the domestic relations court in the form of a motion or an argument supported by testimony at a formal hearing. Second, the domestic relations court must consider the argument, presumably over plaintiff's objections, weigh evidence supplied by plaintiff and Collins, and ultimately decide he is less able to parent than Collins solely because of his disability. These events have not yet occurred and may never occur. Even if Collins asserts the argument, it has no effect on plaintiff's rights unless the domestic relations court agrees with Collins and issues a decree. The

alleged violation is not actual or imminent, but rather is a hypothetical situation that could take place only under the right set of circumstances and sequence of events. If any part of the sequence does not occur, plaintiff will have no cause of action. Accordingly, plaintiff lacks standing to bring this action here.

**C. Plaintiff's Claims Are Wholly Devoid of Merit**

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), the district court may dismiss an action *sua sponte* if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the Court of subject matter jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)).

Even if plaintiff's complaint could be construed as anything other than an attempt to use the Court to impermissibly intervene in a state court domestic relations case, and even if plaintiff had standing to bring this action, plaintiff's federal claims are so devoid of merit that dismissal would be required nonetheless. He first contends the defendants may violate the ADA if they pursue arguments relative to his physical condition. The ADA has three separate titles: Title I covers employment discrimination, Title II covers discrimination by government entities, and Title III covers discrimination by places of public accommodation. The defendants in this action are the mother of plaintiff's child, her attorneys, and their law firm. They are not plaintiff's employers, government entities, or places providing public accommodation. None of these sections of the ADA are applicable to these private party defendants.

Plaintiff also asserts a claim under Title V of the ADA. Title V prohibits retaliation for filing an ADA claim. There is no suggestion that plaintiff has filed any ADA

claims apart from the ones he is attempting to assert in this action. It is possible he is asserting this claim in anticipation that defendants might retaliate against him in the future because he filed this action, but he does not allege that defendants have taken any retaliatory action as a result of his filing this case or threatening to file this case.

Finally, plaintiff attempts to assert a potential equal protection violation under the Fourteenth Amendment. Because the Constitution does not directly provide for damages, plaintiff must proceed under one of the civil rights statutes that authorizes an award of damages for alleged constitutional violations. *Sanders v. Prentice-Hall Corp. Sys.*, No. 97-1638, 178 F.3d 1296 (table), at *1 (6th Cir. Feb. 8, 1999). As no other statutory provision appears to present an even arguably viable vehicle for the assertion of plaintiff's claims, the court construes these claims as arising under 42 U.S.C. § 1983.[2]

To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Generally, to act "under color of state law," the defendant must be a state or local government official or employee.

Here, all of the defendants are private parties, not state government officials or

---

[2] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

employees. A private party may be found to have acted under color of state law only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Merely participating in litigation does not make a private party a co-conspirator or joint actor with the state to qualify the individual as a "state actor." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Similarly, a privately retained attorney is also not considered to be a "state actor" under 42 U.S.C. § 1983. *Washington v. Brewer*, No. 91-1935, 1991 WL 243591, at *1 (6th Cir. Nov. 21, 1991); *see also Polk Cnty v. Dodson*, 454 U.S. 312, 321 (1981) (a public defender does not act under color of state law for purposes of § 1983). Because none of the defendants is a "state actor," plaintiff cannot maintain a claim against any of them for allegedly violating his Fourteenth Amendment rights. Accordingly, plaintiff's claims are so devoid of merit that his complaint must be dismissed for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, plaintiff's complaint is **DISMISSED**. Consequently, plaintiff's motion for a temporary restraining order is **DENIED**.

**IT IS SO ORDERED**.

Dated: June 21, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**